Ms. Joanne Bratton, Reporter The Baxter Bulletin 16 West 6th Street Post Office Box 1750 Mountain Home, Arkansas 72654
Dear Ms. Bratton:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), for my opinion on the correctness of a custodian's decision to deny you access under the Arkansas Freedom of Information Act ("FOIA"), to the termination letter and job evaluation records of the North Arkansas Board of Regional Services ("NABORS") landfill manager. Specifically, you indicate that you sent an FOIA request July 7, 2006 to the Northwest Arkansas Regional Solid Waste Management District, requesting a copy of all personnel records relating to the former landfill manager. According to correspondence attached to your request, the custodian of the records "released [the landfill manager's] personal file with parts redacted for social security number, home address, etc." and stated that "the only part of the file withheld was the job performance evaluation and termination letter." The custodian cites the lack of a "compelling public interest" under A.C.A. § 25-19-105(c)(1) as justification for withholding the latter records.
As background information, you note that in September, 2005, "the landfill north of Mountain Home was purchased by the Arkansas Regional Solid Waste Management District" from a private company. You state that the District "is governed by a board comprised of mayors and judges from the six-county area the landfill serves." You also note that "[t]he District contracts with NABORS for daily operation of the landfill."[1] You further state that "[t]he landfill has been the source of many state environmental violations for several years, including a recent violation of leachate" under the former landfill manager's tenure. The custodian of the records states that the landfill manager "was hired February 1, 2006 and placed on leave June 30, 2006 and terminated July 15, 2006, "during his training period" and that "[h]is termination did not concern a violation of public trust or gross incompetence." The custodian asserts that there is "no compelling public interest in the disclosure of the job performance evaluation and termination letter." My statutory duty under A.C.A. § 25-19-105(c)(3)(B)(i) is to state whether the custodian's decision is consistent with the FOIA.
RESPONSE
I have not reviewed the actual records at issue. That being the case, I cannot state definitively whether a "compelling public interest" is present. That determination is one of fact and I am not empowered as a fact-finder in the issuance of Attorney General Opinions. I can state, however, that at least two factors weigh in favor of a finding of a compelling public interest in this instance: 1) the employee's rank (landfill manager); and 2) the possible existence of a public controversy surrounding the agency and its operation. Not being apprised of the nature of the infraction that lead to the termination, I cannot state whether that factor weighs in favor of the finding of a compelling public interest. Again, I cannot state whether a compelling public interest exists. This is a question of fact. The custodian must make the determination in the first instance, subject of course to judicial review.
The only records at issue with respect to your request are: 1) the termination letter; and 2) the job performance evaluation. The first task presented is to properly classify these records for purposes of analyzing whether they are subject to inspection and copying under the FOIA (A.C.A. §§ 25-19-101 to — 109 (Repl. 2002 and Supp. 2005).
With regard to termination letters, I recently stated in Op. Att'y. Gen. 2006-026 that "My predecessors have opined . . . and I agree, that a dismissal or termination letter that contains the reasons for the termination is an employee evaluation or job performance record for purposes of the FOIA. See e.g., Op. Att'y. Gen. 1995-171, (relying on Ops. Att'y. Gen. 1992-191 and 1988-97). I have not reviewed the termination letter in question, but if it details the reasons for the termination, in my opinion it is properly classified as an "employee evaluation and job performance record for purposes of the FOIA. If, however, it does no more than reflect the fact of termination, without elaboration, it is properly classified as a "personnel record" under A.C.A. § 25-19-105(b)(12) and is subject to release under the test for release of that category of records. See e.g., Op. Att'y. Gen. 2002-150 and 2001-185.
With regard to classification of the second document, it seems fairly apparent that a "job performance evaluation" is properly classified as an "employee evaluation and job performance record" for purposes of the FOIA.
The test for the disclosure of employee evaluation or job performance records is set out at A.C.A. § 25-19-105(c)(1). That subsection dictates that employee evaluation and job performance records be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
The custodian admits that "there has been a final administrative resolution" of the termination. The remaining prongs of the test above are that the records in question "formed a basis" for the decision to terminate the employee and that there be a "compelling public interest" in disclosure.
With regard to the "formed a basis" prong, a termination letter, although written contemporaneously with the termination, has been classified as forming a basis for the termination. See
Op. Att'y Gen. 2006-026 and 2005-030, fn. 3. The question of whether the second document, the employee job performance evaluation "formed a basis" for the termination will obviously depend upon its content. Cf. Op. Att'y. Gen. 1997-189
(concluding that the performance evaluation at issue therein did not appear to have "formed a basis" for any decision to suspend or terminate the employee) and Op. Att'y Gen. 1995-131
(concluding that the particular employee performance evaluation at issue therein did not appear to have formed a basis for the termination, as the evaluation was exceedingly positive).
Assuming each record "formed a basis" for the termination, the remaining prong necessary to release of the records is that there be a "compelling public interest in disclosure." The question of whether a "compelling public interest" exists is one of fact.See Ops. Att'y. Gen. 2006-026; 2005-094; 2005-032; and 2005-011. Numerous Attorney General opinions recite the factors to consider in analyzing the question. As I recently stated in Opinion No. 2006-007:
 The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, Professors Watkins and Peltz, referring to Attorney General Opinions on this issue, offer the following guidelines:
 . . . [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Op. Att'y. Gen. 2004-272 at 5.
Id. at 4 citing Watkins Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004) at 206.
With regard to the nature of the infraction, I have not been apprised of the infraction that led to the termination in this instance. The custodian asserts that the termination of the landfill manager "did not concern a violation of the public trust or gross incompetence." Although "violations of the public trust" and "gross incompetence" are listed above as particular circumstances giving rise to a compelling public interest in disclosure, these factors are not prerequisites to such a finding. As my predecessor stated in Op. Att'y Gen. 2003-132: "Even without addressing the question of whether [the housing authority director's] reported conduct might be characterized as constituting a breach of trust, I believe the public has a strong interest in knowing both the nature of alleged misconduct by so highly placed an official and the nature of the response thereto by the PHA Board."
In addition, I have mentioned violations of administrative rules aimed at conduct that could compromise public safety as being a factor giving rise to a compelling public interest in disclosure. See e.g., Op. Att'y Gen. 2005-175, citing Op. Att'y 1997-400 (". . . the nature of the problem that led to the suspension compels disclosure in this instance where the activities detailed in the records violated administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety"). Although I have not been apprised of the nature of the infraction that led to termination in this instance, you have stated that the landfill has been the "source of many state environmental violations for several years" and note that at least one violation occurred while the employee in question was the landfill manager. As I stated in Op. Att'y. Gen. 2005-175, with regard to administrative rules violations:
 In some cases, this inquiry should be quite straightforward, as in instances of criminal or official conduct that manifestly threatens public safety. In other cases, the inquiry might be more nuanced, as in instances of misconduct that does not directly implicate the public welfare. In the latter category of cases, the factual context in which a violation occurs might prove of paramount importance in determining whether a compelling public interest in disclosure exists. See, e.g., Ark. Op. Att'y Gen. No. 2003-072 (opining that when there had been considerable public debate about the performance of a department of code inspection, a compelling public interest existed in the disclosure of documents revealing that inspectors engaged in a practice of taking breaks longer than authorized by department policy).
Moreover, I noted in Op. Att'y Gen. 2005-175 that:
 . . . it is too formulaic to suggest that "only those disciplinary actions involving the use/possession of drugs, arrests and/or convictions, [and] violation of rules involving safety, fall within the `compelling public interest' area and should be released." To be sure, this office has repeatedly opined that, in particular instances, a compelling public interest exists in the disclosure of documents containing information falling within these categories. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-144
(use/possession of drugs); 2003-257, 97-190 and 97-177 (arrests and/or convictions); 2003-072, 2001-343, 98-210, 98-075, 97-400 and 92-319 (violation of rules involving safety). However, neither I nor any of my predecessors has opined that only these categories of information could give rise to a compelling public interest in disclosure.
Id. at 4.
Finally, the custodian of the records states, in response to your assertion of possible environmental violations, that "[i]f such violations occurred they are available through A.D.E.Q[2] and if fact would be posted on A.D.E.Q.'s web site." I must note in response to this assertion that I have previously concluded that: "assuming a compelling public interest in disclosure existed before any information regarding the pertinent facts was publicized, that interest would not be rendered anything less than compelling merely because some information had become public. . . ." Op. Att'y Gen. 2006-038.
Again, I have not been apprised of the nature of the infraction which led to termination in this instance. I am not empowered as a fact-finder in the issuance of Attorney General Opinions. The custodian should consider the discussion above in weighing this initial factor.
Similarly, I am not in a position to evaluate the factual question of whether the second criterium listed above, a public controversy surrounding the issue, exists in this circumstance. Two eminent commentators on the FOIA, Professors Watkins and Peltz, in their book THE ARKANSAS FREEDOM OF INFORMATION ACT (4th Ed. 2004) state that "if the issue is debated publicly and has foreseeable and substantial ramifications for those who are not direct participants, it is a public controversy." Id.
at 206. Additional reported information with regard to the situation you describe suggests that the landfill manager was "planning to resign because of environmental and safety concerns." Joanne Bratton, "Landfill owner responds toBulletin's FOI request," Baxter Bulletin, July 26, 2006. In addition, it has been reported that "[i]n October, contaminated water samples were taken from two wells about 20 feet from the landfill," but that "there is no evidence contamination has gone off-site." Id. Finally, the custodian notes that a public hearing was held approximately one week after the landfill manager's termination on the issue of expansion of the landfill and that "[a]pproximately fifty people were present at the hearing, including A.D.E.Q. personnel and NABORS personnel."[3] Again, not being empowered as a finder of fact, I cannot determine, as a factual matter, whether a public controversy exists regarding this topic. The above factors regarding safety and public health are certainly relevant in evaluating the matter, however.
With regard to the rank of the employee at issue, you have stated that he was the "landfill manager." The custodian describes the employee as being in "a mid-level management position." I assume, however, from the title of "landfill manager" that the employee in question had day-to-day managerial responsibilities with regard to the landfill. I and my predecessors have found a compelling public interest with respect to disclosure of records relating to a variety of public employees with managerial responsibilities, in some cases without the necessity of factoring in the nature of the infraction that led to the termination. See, e.g., Ops. Att'y. Gen. 2006-007
(Director of the Arkansas Fair Housing Commission); 2003-132 (housing authority director); 1995-242 (assistant city manager); and Op. Att'y. Gen. 1997-189 (Administrative Director of Arkansas Children's Hospital "Child Health and Family Life Institute"); and 95-258 (Arkansas Arts Council Agency Program Coordinator (Grants Programs Manager).
Again, I am not situated to determine whether all the facts considered together would support the release of particular job performance or evaluation records. Only the custodian of the records can make that final decision, subject to review by a trier of fact, such as a judge or jury, with access to, and in full consideration of, all the relevant evidence. I can state, however, that at least two factors may weigh in favor of a finding of a compelling public interest in this instance: 1) the employee's rank (landfill manager); and 2) the possible existence of a public controversy surrounding the agency and its operation. The custodian must weigh all of the relevant factors in his or her determination as to release of the records, subject of course, to the right of judicial review.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Your request and the correspondence appended to it do not make clear the nature of "NABORS," and whether it is one and the same as the Northwest Arkansas Regional Solid Waste District, or perhaps a creation of that entity. In any event, there is a contract between NABORS and the District and all parties appear to agree that the custodian of records is an entity whose records are subject to the FOIA.
[2] This is a reference to the Arkansas Department of Environmental Quality.
[3] The custodian unaccountably characterizes this as "one of the events that lead NABORS to conclude that no compelling public interest was present."